UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CAMSOFT DATA SYSTEMS, INC.

VERSUS

SOUTHERN ELECTRONICS SUPPLY, INC., ET AL.

CIVIL ACTION

NO. 09-1047-JJB

RULING

This matter is before the Court on a motion (doc. 223) for partial summary judgment filed by Active Solutions, LLC, Brian Fitzpatrick, and Henry J. Burkhardt (collectively "Active"). Third party defendant First Financial Insurance Company ("First Financial") has filed an opposition (doc. 248), and Active has filed a reply (doc. 258). There is no need for oral argument.

In the present motion, Active requests partial summary judgment finding that First Financial owes a duty to defend Active in the pending litigation wherein Active and numerous other defendants have been sued by CamSoft Data Systems, Inc. for purported violations of numerous state and federal statutes.

Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The interpretation of an insurance contract generally

1

involves a question of law. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007).

In deciding whether there is a duty to defend, the court liberally construes the allegations of the complaint to determine whether they set forth grounds that bring the claims within the scope of the insurer's duty to defend the suit. *Carnival Brands, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 726 So.2d 496, 500 (La. App. 5th Cir. 1999). The insurer has a duty to defend unless the allegations of the complaint as applied to the policy unambiguously preclude coverage. *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872-73 (5th Cir. 2009), citing *Elliott v. Cont'l Cas. Co.*, 949 So.2d 1247, 1250 (La. 2007). If the complaint discloses even a possibility of liability under the policy, the insurer is obligated to provide a defense. *Martco*, 588 F.3d at 872-73, citing *Meloy v. Conoco Inc.*, 504 So.2d 833, 839 (La. 1987). Any ambiguity in an insurance contract is construed against the insurer. *Martco*, 588 F.3d at 872.

The insurer must defend the entire suit even if some claims or allegations might not be covered. *Coleman v. School Bd. of Richland Parish*, 418 F.3d 511, 523 (5th Cir. 2005).[1] It is "well settled that the insurer's obligation to defend a suit against its insured, whether groundless or not, must be measured by the allegations contained in the complaint rather than by the outcome of the suit."

---

[1] *See also Jensen v. Snellings* 841 F.2d 600, 612 (5th Cir. 1988) ("Even though the main thrust of a complaint falls outside policy coverage, *all* factual allegations are considered in determining the duty to defend, and if there are *any* facts which, when taken as true, support a claim for which coverage is not unambiguously excluded, then the duty to defend arises.").

*Bandy v. Avondale Shipyards, Inc.*, 458 F.2d 900, 904 (5th Cir. 1972).[2] However, statements of conclusions in the complaint that are unsupported by factual allegations will not trigger a duty to defend. *Coleman*, 418 F.3d at 523.

The insurance policies at issue state, "[t]his insurance applies to . . . 'Advertising injury' caused by an offense committed in the course of advertising [Active's] goods, products or services." (Doc. 248, p. 6; doc. 223-2, no. 22). "Advertising injury" is defined in the policies as an injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   b. Oral or written publication of material that violates a person's right of privacy;
   c. Misappropriation of advertising ideas or style of doing business; or
   d. Infringement of copyright, title or slogan.

(Doc. 248, p. 6; doc. 223-2, no. 23).

Active claims First Financial owes a duty to defend because CamSoft has sued Active for an "advertising injury," based on allegations that Active slandered or disparaged CamSoft or that Active misappropriated CamSoft's advertising ideas or CamSoft's style of doing business. First, regarding Active's claim for a duty to defend based on slander/disparagement, Active cites paragraphs 314-15

---

[2] *See also, Adams v. Frost*, 990 So.2d 751, 756 (La. App. 2d Cir. 2008), for application of Louisiana's eight corners rule, whereby the four corners of the complaint are compared with the four corners of the policy to determine whether or not there exists a duty to defend. This determination is made without resort to extrinsic evidence. *Martco*, 588 F.3d at 872.

and 357 of the Second Supplemental and Amended Complaint (doc. 205) (hereinafter "Complaint"). Paragraphs 314 and 315, however, represent statements made during the course of litigation which occurred, according to the Complaint, at a deposition taken in June of 2008 and, in any event, after April 24, 2007, when the suit at issue in these paragraphs was initially filed. The policy requires that the offense at issue be committed during the policy period (doc. 248, p. 24; doc. 223-2, no. 22), but according to Active the policy was only in effect until January 9, 2007 (doc. 223-2, no. 2). Additionally, these statements, even if deemed to be disparaging or slander, do not meet the independent requirement of the insurance policies that the advertising injury must be "caused by an offense committed in the course of advertising [Active's] goods, products or services."[3]

Paragraph 357 of the Complaint, cited by Active, merely asserts that Active and others "did improperly influence, or conspire to improperly influence, others not to deal with CamSoft." This paragraph does not contain factual allegations related to disparagement or slander, nor does this paragraph address an offense committed in the course of advertising Active's goods, products or services. Accordingly, Active has not established a duty to defend based on allegations of an advertising injury arising out of slander or disparagement.

---

[3] The statements made in the course of litigation do not fall under any reasonable definition of the term "advertising," including definitions cited by Active from Black's Law Dictionary and *John Deer Ins. Co. v. Shamrock Indus., Inc.*, 696 F.Supp. 434, 439 (D. Minn. 1988), as they were not made in connection with the solicitation of business.

Active also asserts it is owed a duty to defend for allegations of advertising injury caused by "misappropriation of advertising ideas or style of doing business." According to the Complaint, CamSoft engaged in advertising and free demonstrations of its MESH Technology to gain media attention[4] and is asserting an advertising injury claim against Active for misappropriation of advertising ideas or styles of doing business. First Financial, however, contends that Active is alleged to have surreptitiously misappropriated CamSoft's confidential information or trade secrets, not CamSoft's advertising ideas or style of doing business. Active counters that CamSoft seeks loss of reputation and other damages specifically associated with the advertising itself. (*See* Complaint, Doc. 205, ¶¶ 336 & 377).

In support of its motion, Active cites numerous allegations from the Complaint, including paragraph 106, which discusses the use of Active's logo at a presentation at a WiFi Summit mentioning Active and others "as partners in the development of the wireless video surveillance system." Read in context with the other portions of the Complaint, this allegation could be deemed to constitute misappropriation of CamSoft's advertising ideas or style of doing business. The court therefore finds that this portion of the Complaint, along with others cited by Active, is sufficient to establish First Financial owes a duty to defend Active in the pending CamSoft litigation under the "misappropriation of advertising ideas or

---

[4] See paragraphs 44 and 160 of the Complaint (doc. 205).

style of doing business" definition of "advertising injury." CamSoft has alleged that these actions, along with others, caused its injuries, and the court finds that some of these injuries are alleged to be caused, at least in part, by an offense committed in the course of advertising Active's products, goods or services. Because the Complaint does not unambiguously preclude coverage and because the Complaint discloses a possibility of liability under the policies, First Financial owes a duty to defend Active in this litigation.[5]

While the cases cited by Active are somewhat factually distinguishable, so too are the cases cited by First Financial dealing with copyright infringement. As Active asserts, *Frog Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742 (3d Cir. 1999) and others are distinguishable because CamSoft has not merely alleged that Active and its co-conspirators misappropriated the MESH Technology and then advertised the MESH Technology as their own. On the contrary, CamSoft has specifically alleged that it used the MESH Technology and its free provision of services as a method of gaining customers and that Active and its co-conspirators misappropriated that strategy. Additionally, the "connection" requirement of *Sentry Ins. Co. v. R.J. Weber Co., Inc.*, 2 F.3d 554 (5th Cir. 1993) has been met as the court finds that CamSoft has alleged that some of its advertising injuries were caused in the course of advertising Active's products, goods or services.

---

[5] The issue of coverage is not presently before the court. Our ruling is limited to the matter of whether Active is owed a duty to defend.

First Financial contends that an endorsement significantly limited the definition of "advertising injury." However, as Active correctly points out, the endorsement does not, on its face, apply to the policies. The policies define "advertising injury" in definition 1 of Section V. The endorsement states that First Financial is deleting and replacing "definition 14" of Section V which it incorrectly identifies as "Personal and Advertising Injury." However, "Personal and Advertising Injury" is not even a defined term in the policies. Definition 14 in Section V of the policies is actually entitled "Products-completed operations hazard." At best for First Financial, the endorsement creates an ambiguity which must nonetheless be construed against the insurer. *See Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009).

First Financial also cites a provision of the insurance policies that excludes coverage for advertising injury arising out of "oral or written publication of material whose first publication took place before the beginning of the policy period." (Doc. 223-4, p. 28).[6] The policies commenced on October 11, 2004 (doc. 248, p. 24). According to First Financial, CamSoft's chief complaints against Active date back to a meeting with its purported co-conspirators that occurred on July 8, 2004 (doc. 248, p. 24). However, the Complaint does not allege that the publication of material at issue (such as the marketing discussed in paragraph 106) occurred at the July 2004 meeting; therefore First Financial

---

[6] While it may have initially argued the applicability of the intentional torts exclusion, First Financial appears to concede the inapplicability of the intentional tort exclusion. *See* Doc. 248, p. 28-29.

has not established that this exclusion applies. That CamSoft alleges some injuries and/or causes of action that are not covered by the policy does not defeat First Financial's duty to defend Active. *See Coleman v. School Bd. of Richland Parish*, 418 F.3d 511, 523 (5th Cir. 2005).

Accordingly, Active's motion (doc. 223) for partial summary judgment is HEREBY GRANTED.

Signed in Baton Rouge, Louisiana, on May 6, 2011.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**